UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RONALD LIGHT,

        Plaintiff,                      Case No. 2:21-cv-191

v.                                      Honorable Janet T. Neff

SANOFI AVENTIS U.S. LLC et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.      **Factual allegations**

        Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Sanofi-Aventis U.S.

LLC; Sanofi U.S. Services, Incorporated; and Corizon Health Incorporated (Corizon). Plaintiff also sues the following URF medical staff: Doctors Carmen M. Leon and Canlas Bienvenido, and Nurse Practitioner Susan Wilson.

Plaintiff alleges that Defendants manufactured, distributed, and prescribed him Zantac after they knew or should have known about health risks the drug posed. Plaintiff is currently a 69-year-old man. He started taking Zantac in 2016 to treat stomach pain. Since 2016, Plaintiff suffered from several symptoms for which Defendants Corizon, Leon, Bienvenido, and Wilson again prescribed him Zantac.

Defendants allegedly continued prescribing him the medication after a purported FDA announcement in 2018, which reported that NDMA had been found in samples of Zantac.[1] According to the complaint, NDMA is a carcinogen. Plaintiff contends that Defendants "knew or should have known" about the FDA report purportedly warning of the existence of impurities in the drug. (Compl., ECF No. 1, PageID.8.) Notwithstanding the FDA report, Defendants prescribed him Zantac until August 2019.

Plaintiff alleges that various conditions he developed after 2016, some of which were treated with Zantac, were instead caused by Zantac. These conditions include body aches, stomach aches, dizziness, disorientation, and itchy ears. On May 5, 2021, more than 18 months after he was last prescribed Zantac, Plaintiff was diagnosed with a stomach ulcer.

---

[1] NDMA presumably is an acronym for N-Nitrosodimethylamine. *See* FDA, *FDA News Release: FDA Requests Removal of All Ranitidine Products (Zantac) from the Market* (Apr. 1, 2020), https://www.fda.gov/news-events/press-announcements/fda-requests-removal-all-ranitidine-products-zantac-market.

Curiously, Plaintiff's timeline conflicts with that of the FDA. Plaintiff asserts that the FDA issued a report in 2018 warning of NDMA in Zantac. (*See, e.g.*, Compl., ECF No. 1, PageID.8.) The FDA lists its earliest statement on the subject as issuing on September 13, 2019. *See* FDA, *FDA Updates and Press Announcements on NDMA in Zantac (ranitidine)* (Apr. 16, 2020), https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-zantac-ranitidine. Plaintiff neither attaches the FDA report to his complaint nor provides any details to identify the 2018 report.

Plaintiff argues that Defendants' conduct violated his Eighth Amendment rights. For relief, Plaintiff seeks $7.5 million in compensatory damages and costs.

II.     **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

3

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III. **Under color of state law**

Plaintiff sues Defendants Sanofi-Aventis U.S. LLC and Sanofi U.S. Services, Incorporated. As a preliminary matter, the Court must first determine whether Plaintiff has properly named these Defendants as parties to this action.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West*, 487 U.S. at 48. In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Where the defendants are not state officials, their conduct will be deemed to constitute state action only if it meets one of three narrow tests. The first is the symbiotic relationship test, or nexus test, in which the inquiry focuses on whether "the State had so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Jackson*, 419 U.S. at 357–58. Second, the state compulsion test describes situations "in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution." *NBC v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1026 (11th Cir. 1988); *accord Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Adickes v. S.H. Kress*

4

*& Co.*, 398 U.S. 144, 170 (1970). Finally, the public function test covers private actors performing functions "traditionally the exclusive prerogative of the State." *Jackson*, 419 U.S. at 353; *accord West*, 487 U.S. at 49–50; *see generally*, *Lugar*, 457 U.S. at 936–39 (discussing three tests).

Plaintiff fails to demonstrate that Defendants Sanofi-Aventis U.S. LLC and Sanofi U.S. Services, Incorporated acted under color of state law. These Defendants are not public officials. The only conduct Plaintiff attributes to these Defendants asserts that they manufactured, sold, and distributed Zantac to the general public even after the FDA reported that the drug may contain harmful impurities. Plaintiff has not presented any allegations by which the conduct of Defendants Sanofi-Aventis U.S. LLC and Sanofi U.S. Services, Incorporated could be fairly attributed to the State. Accordingly, he fails to state a § 1983 claim against them.

IV. **Eighth Amendment**

Plaintiff alleges that Defendants Corizon, Leon, Bienvenido, and Wilson prescribed Plaintiff Zantac after 2018 in violation of the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual

5

punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.

To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. In a medical claim where a plaintiff has received treatment, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). That is to say, a defendant's care objectively "qualifies as 'cruel and unusual' only if it is 'so grossly incompetent' or so grossly 'inadequate' as to 'shock the conscience' or 'be intolerable to fundamental fairness.'" *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021) (quoting *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)).

Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff's Eighth Amendment claims against Defendants Corizon, Leon, Bienvenido, and Wilson fail on both prongs. First, Plaintiff fails to allege facts that would demonstrate a prescription for Zantac placed him at substantial risk of serious harm. To be sure, Plaintiff alleges that NMDA is a carcinogen, that the FDA reported in 2018 that it found NMDA in Zantac, and that Defendants prescribed him Zantac after the FDA's report issued.[2] However, none of Plaintiff's allegations suggest, for example, that the FDA or any other body perceived such a serious risk that they ordered pharmacies to stop dispensing Zantac or advised medical professionals to stop prescribing the medication. None of Plaintiff's allegations describe any sort of guidance, much less widespread guidance, within the medical community to change Zantac prescribing practices at all, which would be expected if the FDA learned that the medication posed a substantial risk of serious harm. To the extent that Plaintiff believes that his health issues since 2016 have been caused by Zantac, he engages in nothing more than rank speculation. Plaintiff does not even allege that NMDA has been linked to any of the health issues he experienced. He

---

[2] As noted above, the FDA's own timeline indicates that its first report on the topic issued in September 2019, several weeks after Defendants last prescribed him Zantac. Notwithstanding the Court's ability to take judicial notice of the FDA's timeline under Rule 201 of the Federal Rules of Evidence, the timeline published by the FDA plays no role in the Court's decision.

simply concludes, without any support, that his health issues were caused by his medication. None of Plaintiff's allegations contend that Zantac posed a substantial risk of serious harm to those taking it. *See Farmer*, 511 U.S. at 834. Therefore, Plaintiff cannot demonstrate that Defendants Corizon, Leon, Bienvenido, or Wilson provided him care that was so grossly incompetent as to shock the conscience in order to satisfy the objective prong. *See Phillips*, 14 F.4th at 535.

Plaintiff's allegations also fail the subjective prong of the deliberate-indifference test. His only relevant allegations in support of the subjective prong assert that Defendants "knew or should have known" of the FDA's purported 2018 report. Yet, these allegations do not demonstrate that any Defendant had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. A plaintiff must allege facts showing that a defendant acted with criminal recklessness. *See Phillips*, 14 F.4th at 535. Nothing in Plaintiff's allegations fairly implies that any Defendant acted with criminal recklessness. Even if Defendants knew of the purported FDA report, that Zantac may be tainted with NDMA, and that NDMA is a carcinogen, it is not at all clear that any Defendant knew of and disregarded an *excessive* risk to Plaintiff's health by prescribing him Zantac. *See Farmer*, 511 U.S. at 837. Defendants merely continued prescribing Plaintiff a medication he had taken previously. Thus, for all the reasons above, Plaintiff cannot satisfy the subjective prong.

In short, Plaintiff's allegations appear to argue that Defendants committed medical malpractice, but the Eighth Amendment does not act as a federal malpractice statute. *See Phillips*, 14 F.4th at 535. Although the Court is sympathetic to Plaintiff's health issues, his allegations fail to satisfy either prong of the deliberate-indifference test. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   December 14, 2021                             /s/ Janet T. Neff
                                                    Janet T. Neff
                                                    United States District Judge